## Case No. 4,139.

DUNCAN et al. v. MOBILE & O. R. CO. et al.

[3 Woods, 597.] [1]

Circuit Court. S. D. Alabama. June Term, 1879.

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

John A. Campbell, Peter Hamilton, T. A. Hamilton, F. N. Bangs, J. A. Garfield, George N. Stewart, W. G. Jones, George Hoadly, E. H. Grandin, and E. L. Andrews, representing the various parties in interest.

Before BRADLEY, Circuit Justice, and WOODS, Circuit Judge.

BRADLEY, Circuit Justice. Bondholders secured by a common mortgage have equal rights in the common security, proportional to the amount held by each. If the mortgaged property be sold to a stranger, the proceeds are equally distributed and perfect justice is done to all. If bondholders purchase the entire property, they have an equitable right. after satisfying the costs and charges of the litigation and trust, to pay the balance in bonds, so far as their own proportion of such balance extends, for it is to come to them. But it is evident that those who singly, or in combination, hold a large portion of the bonds, have a great advantage over the minority; for they can pay their own proportion of the purchase money, which is much the largest, in bonds, and have only a small amount of cash to pay, whilst the minority can only pay a small proportion in bonds, and have a large amount to pay in cash, which, as a generality, they are totally unable to pay. This practically puts it in the power of the majority to get the property at a large sacrifice, and turn the minority off with a mere pittance. This is inequitable, and to be avoided if possible. Perhaps the most equitable mode of disposing of the property (when practicable), when it cannot be sold for cash

to an amount sufficient to pay the bondholders, is to decree a strict foreclosure, in which all will participate alike, or to make a sale for the equal benefit of all the bondholders who choose to come in and participate. A strict foreclosure may be attended with difficulties in those states where a mortgage is a mere security, and does not give a legal title, besides which, it places the property in the hands of a vast number of beneficiaries whose consent may be very difficult to obtain in perfecting a new organization for conducting the business. A sale for the benefit of all is attended with the difficulty of determining who shall make the bid. The court has sometimes authorized the trustees of the mortgage to bid for the bondholders. In this case, it is obvious that one class or the other of the bondholders would be dissatisfied with any selection of trustees which the court might make. To decree that all the bondholders. shall be allowed to participate in any sale that may be made, would practically nullify an auction sale. Who would bid on such. terms?

In this case, it has been brought to our notice that a scheme for reorganizing the company, or the interests represented in its property, has been agreed to and subscribed by about seventy-eight per cent (in interest) of the first mortgage bondholders. We have examined this scheme, and if not perfectly equitable, we are unable to point out any want of fairness in it. It would give to those who have not joined in it, should they do so, about twenty and one-half per cent interest in the entire purchase; whilst if all first mortgage bondholders (including the Tennessee bonds in the number) were placed on an exact proportionate division, the non-subscribing interest in the purchase would amount to about twenty-one and five-eighths per cent. But they run the risk of the Tennessee bonds being placed ahead of the others. If the latter were given the preference, then, subject to that incumbrance. the non-subscribing interests would, by an equal division with the others. take about twenty-four eight-tenths per cent of the purchase, which is probably less advantageous to them than the proposed plan of reorganization would be.

Looking at the difficulties which beset the subject on every side, we think that if we allow the non-subscribing bondholders to participate in the purchase of the property, should it be made in behalf of the reorganizing combination, on an equal footing with those who have joined it, that we shall have done all that we can do under the circumstances to protect their interests. The parties. representing the reconstruction scheme, through their counsel, have offered to allow them to come in, and to extend the time for doing so until the first of August. We suggest that this time should be extended to the day of sale of the property. We perceive that the trustees have the power to do this— and keep the agreement on foot by extending

the time sixty days at a time. We have, therefore, proposed an additional proviso to the decree to carry out this view. We hope that it will be acceded to by the counsel for the complainants and those representing the reconstruction scheme. We do not wish to dictate these terms to the parties who propose to purchase, but suggest that, in our judgment, the interest of all parties would be subserved by an arrangement of this sort. (The counsel for the complainants here suggested that it was very desirable, if the plan of reconstruction should be generally adopted, to avoid any sale at all, and proposing to extend the time for other bondholders to come to an arrangement, to the 1st of September, the court adopted that modification, and announced that the decree would be made accordingly, unless very forcible objections to it should be presented at to-morrow's session of the court.)

Counsel for Ketchum & Moran having applied for a rehearing, the court denied the application. Counsel for Ketchum & Moran then applied for the allowance of an appeal, and also to fix the amount of the appeal bond at $10,000. On this application the court, after consideration, delivered the following opinion, fixing the bond at $100,000.

BRADLEY, Circuit Justice. An appeal being granted and allowed in these cases from the decree rendered therein on the 15th day of June, 1877, the question is raised as to the amount of the appeal bond to be given by the appellants, they being the plaintiffs in the second and third suits, and defendants in the first. The decree appealed from sustained the claim of Alexander Duncan, as holder of certain first mortgage coupons to the amount of over $500,000 to come in pari passu with the first mortgage bondholders, and directs a foreclosure of the first mortgage and a sale of the mortgaged property to pay the bonds secured thereby, and also certain other bonds given for interest, amounting in the aggregate to about ten millions of dollars. Purchasers are, by the decree, allowed to pay the purchase money in bonds and coupons to the extent of their proportionate interest as bondholders in the whole amount of first mortgage bonds. About four-fifths of the bondholders have agreed to and subscribed a scheme for reorganizing the company and purchasing the road. The court has allowed the remaining bondholders until the 1st of September to join in said scheme. A portion of the bondholders, holding less than one-tenth of the entire mortgage interest, are dissatisfied with the decree, and promote the appeal.

The property being in the hands of a receiver, and not producing much, if any, more than the expenses and necessary repairs of the road, the bondholders to whom the property or its proceeds really belongs, will be kept out of possession for two or three years by the intervention of the appeal. This delay in obtaining possession of the property or its proceeds we regard as calculated greatly to injure them. By having immediate possession they could make the necessary improvements and connections required for making the property much more remunerative, and could manage it much more to their advantage generally than a receiver can do. Or, if the property were immediately sold, they would be in possession of the interest of the purchase money, of which they will now be deprived for two or three years by the appeal. In our judgment, therefore, an appeal bond for one hundred thousand dollars is very moderate in amount.

The appellants contend that on the principles of the decision of the supreme court in the case of Jerome v. McCarter, 21 Wall. [88 U. S.] 17, a bond for one hundred thousand dollars is greatly in excess of what should be required. They insist that, in contemplation of law, possession by a receiver is equally beneficial to those who are interested in the property, as possession by the parties themselves. Whilst this may be the case with regard to dead property, or even real estate generally, we think it is not so where the property, like a railroad, is perishable in its character, and has to be managed, worked, repaired and taken care of, in order to preserve it. We think that the owner is a better manager than a trustee or receiver, who is hampered and restrained in his management, and cannot take advantage of all those means and opportunities which the owner could do for rendering the property most profitable and productive. On these grounds, we think that the damage sustained by the delay will be much more than the mere costs and expenses of the suit, and that the actual loss and injury to the owner, or in this case, the bondholders, may be taken into consideration by the court in fixing the amount of the bond, and that loss and damage, we think, will not be less than the amount we have required.

The most forcible difficulty which presents itself to our minds is the measure of damages which would be applicable in a suit on the bond. Would it be admissible for the plaintiffs to show a loss to the bondholders by reason of advantages lost for the cause above referred to? Of this there may be a question. But our opinion is, on the whole, that such a damage would be the subject of a recovery. If damages are really sustained, there seems no good reason why they should not be recovered.